# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, ) ) ) Plaintiff, ) ) ) v. ) ) RCS - GERMANTOWN I, LLC, ) GERMANTOWN - NDI, LLC, ) GERMANTOWN - BD, LLC, ) GERMANTOWN - PCV, LLC, ) GERMANTOWN - EDE, LLC, ) and THE FIRST MERCANTILE TRUST ) COMPANY, ) ) Defendants. ) | Civil Action No. 19-2198 |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, Massachusetts Mutual Life Insurance Company ("Tenant" or "MassMutual"), and for its Complaint for Declaratory Judgment against Defendants, RCS - Germantown I, LLC, Germantown - NDI, LLC, Germantown - BD, LLC, Germantown - PCV, LLC, and Germantown - EDE, LLC (collectively "Landlord"), and The First Mercantile Trust Company ("Subtenant" or "FMT," and collectively with Landlord "Defendants"), states as follows:

## THE PARTIES

1. Plaintiff, Massachusetts Mutual Life Insurance Company, is a Massachusetts corporation with its principal place of business located at 1295 State Street, Springfield, Massachusetts 01111.

2. Defendant, RCS - Germantown I, LLC ("RCS - Germantown"), is a Colorado

limited liability company with its principal place of business located at 371 Centennial Parkway, Suite 200, Louisville, Colorado 80027.  Upon information and belief, the sole member of RCS Germantown is a citizen of Colorado.  RCS - Germantown is registered with the Tennessee Secretary of State to transact business in Tennessee and owns real property located in this judicial district.  RCS - Germantown may be served with process by serving its registered agent, National Registered Agents, Inc., 300 Montvue Road, Knoxville, Tennessee 37919-5546.

3. Defendant, Germantown - NDI, LLC ("Germantown - NDI"), is a Colorado limited liability company with its principal place of business located at 371 Centennial Parkway, Suite 200, Louisville, Colorado 80027.  Upon information and belief, the sole member of Germantown - NDI is a citizen of Colorado.  Germantown - NDI is registered with the Tennessee Secretary of State to transact business in Tennessee and owns real property located in this judicial district. Germantown - NDI may be served with process by serving its registered agent, National Registered Agents, Inc., 300 Montvue Road, Knoxville, Tennessee 37919-5546.

4. Defendant, Germantown - BD, LLC ("Germantown - BD"), is a Colorado limited liability company with its principal place of business located at 371 Centennial Parkway, Suite 200, Louisville, Colorado 80027.  Upon information and belief, the sole member of Germantown - BD is a citizen of Colorado.  Germantown - BD is registered with the Tennessee Secretary of State to transact business in Tennessee and owns real property located in this judicial district. Germantown - BD may be served with process by serving its registered agent, National Registered Agents, Inc., 300 Montvue Road, Knoxville, Tennessee 37919-5546.

5. Defendant, Germantown - PCV, LLC ("Germantown - PCV"), is a Colorado limited liability company with its principal place of business located at 371 Centennial Parkway, Suite 200, Louisville, Colorado 80027.  Upon information and belief, the sole member of

4823-4182-6192
2824397-000006

Germantown - PCV is a citizen of Colorado. Germantown - PCV is registered with the Tennessee Secretary of State to transact business in Tennessee and owns real property located in this judicial district. Germantown - PCV may be served with process by serving its registered agent, National Registered Agents, Inc., 300 Montvue Road, Knoxville, Tennessee 37919-5546.

6. Defendant, Germantown - EDE, LLC ("Germantown - EDE"), is a Colorado limited liability company with its principal place of business located at 371 Centennial Parkway, Suite 200, Louisville, Colorado 80027. Upon information and belief, the sole member of Germantown - EDE is a citizen of Colorado. Germantown - EDE is registered with the Tennessee Secretary of State to transact business in Tennessee and owns real property located in this judicial district. Germantown - EDE may be served with process by serving its registered agent, National Registered Agents, Inc., 300 Montvue Road, Knoxville, Tennessee 37919-5546.

7. Defendant, The First Mercantile Trust Company, is a Tennessee corporation with its principal place of business located at 57 Germantown Court, Suite 400, Cordova, Tennessee 38018. FMT may be served with process by serving its registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312. FMT is a subtenant of the subject lease agreement and is named as a defendant in this action pursuant to Tenn. Code Ann. § 29-14-107 solely because its interest as Subtenant would be affected by the declaratory judgment prayed for herein. MassMutual seeks no affirmative relief from FMT.

## JURISDICTION AND VENUE

8. This is an action for declaratory judgment pursuant to Tenn. Code Ann. §§ 29-14-101 *et seq.*, filed for the purpose of resolving a real controversy regarding the rights, status, and legal relations between the parties under a written lease agreement relating to real property in Cordova, Shelby County, Tennessee. This Court has jurisdiction over the subject matter of this

suit pursuant to T.C.A § § 29-14-103 and 29-14-104, which provide for declaratory judgment actions construing contracts.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States. The value of the object of this litigation exceeds the sum or value of $75,000.00, as Landlord has denied Tenant its right to exercise the early termination option under the subject lease agreement and rejected the Early Termination Fee of $1,300,554.00 tendered by Tenant ("Termination Fee").

10. This Court has general and specific personal jurisdiction over Defendants based upon their continuous and systematic transaction of business in, and sufficient minimum contacts with, the State of Tennessee. Landlord is party to the subject lease agreement which relates to real property located in Cordova, Shelby County, Tennessee.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (2).

## THE CONTROVERSY

**A.   Background**

12. MassMutual leases office space in the normal course of business for two purposes: (1) to house its local sales firms and (2) to house its corporate activities, including those of its subsidiaries. MassMutual's local sales firms are operated by independently contracted advisors and are not subsidiaries of MassMutual. The leases that MassMutual enters into for its local sales firms are referred to herein as "agency leases" and the leases that MassMutual enters into for corporate purposes are referred to herein as "corporate leases."

13. On May 30, 2008, MassMutual acquired FMT, a Memphis-based trust company that offers products and services such as collective investment trusts, retirement plan

recordkeeping, and directed trustee services. Collective investment trusts are tax-exempt pooled investment products that can only be offered by a bank or trust company.

14. The transaction represented the first acquisition by MassMutual of a financial services company specifically providing niche trust company capabilities such as offering collective investment trusts in the retirement plan market. The acquisition of FMT provided MassMutual the ability to grow in the small retirement plan market.

15. As a result of the acquisition, FMT became an indirect wholly-owned subsidiary of MassMutual. After closing of the acquisition, FMT retained its headquarters at the same location at its existing commercial office location at the Property (defined below), and FMT's management team retained ongoing responsibility for FMT's operations.

16. In connection with the FMT acquisition, MassMutual entered into a lease dated July 14, 2008 (the "Lease") with Landlord's predecessor in interest, DRA CRT Germantown Center, LP ("Original Landlord") for 48,291 square feet (the "Leased Premises") in the commercial real property known as The Kimbrough Building and located at 57 Germantown Court, Cordova, Tennessee 38018 (the "Property").  A true and correct copy of the Lease and Commencement Date Letter are attached hereto as Exhibit A and incorporated herein. MassMutual entered into the Lease for the purpose of acquiring a subsidiary, and therefore, the Lease is considered a corporate lease.

17. The term of the Lease commenced on August 1, 2008 and, subject to MassMutual's early termination option as the Tenant, expires on December 31, 2023.

18. The Lease acknowledges FMT's existing occupancy under FMT's original Existing Lease dated May 26, 1998, and provides that the Lease executed by MassMutual shall govern once executed. *See* Exhibit A, Lease,¶3.

5

19. MassMutual and FMT entered into a sublease with an effective date of July 1, 2008, (the "Sublease"). Pursuant to Section 16(B) of the Lease, MassMutual was permitted, without the consent of Landlord, to enter into the Sublease because FMT was a subsidiary of MassMutual. A true and correct copy of the Sublease is attached hereto as Exhibit B and incorporated herein.

20. Specifically, MassMutual subleased to FMT 33,246 square feet of the Leased Premises ("FMT Space") where FMT operated prior to and after the acquisition. The Sublease provided FMT with the uninterrupted, continued occupancy of its existing headquarters within the Leased Premises. The original expiration date of the Sublease was December 30, 2023, which was one day prior to the expiration of the term of the Lease.

21. The remaining balance of the 15,675 square feet of the Leased Premises ("MassMutual Corporate Space"), was designated to be occupied by MassMutual employees to support FMT and other corporate purposes.

22. In late 2016, Landlord acquired the Property from Original Landlord. Original Landlord assigned all right, title and interest in the Property to Landlord.

23. Upon its acquisition of the Property, Landlord assumed all of the obligations and rights as Landlord under the Lease.

24. In 2013, MassMutual acquired The Hartford's Retirement Plan Group. As a result of this acquisition, MassMutual became a leader in the small retirement plan market, making FMT's business capabilities less of a strategic fit.

25. In 2017, MassMutual began to explore a sale of FMT because the products and services offered by FMT no longer fit within MassMutual's broader strategy in the retirement services marketplace. FMT's collective investment trusts were not core to MassMutual's

investment product offering, and FMT's available services were never integrated into MassMutual's broader product suite.

26. In August 2018, MassMutual entered into an agreement to sell ("FMT Sale") 100% of the outstanding capital stock of FMT to Mid-Atlantic Capital Group, Inc. ("Purchaser"). In connection with the FMT Sale, MassMutual and Purchaser negotiated changes to the Sublease.

27. On September 10, 2018, in accordance with the terms and conditions of the Lease, MassMutual requested Landlord's consent to the Sublease and the pending modification to Sublease since FMT would no longer be a subsidiary of MassMutual. A true and correct copy of the September 10, 2018, request to Landlord is attached as Exhibit C.

28. MassMutual, FMT, and Landlord executed a Consent to Sublease dated November 28, 2018, approving the Sublease and modifications of the terms of the Sublease. A true and correct copy of the Consent to Sublease is attached hereto as Exhibit D and incorporated herein.

29. On November 30, 2018, MassMutual completed the FMT Sale. Upon closing, FMT was no longer a subsidiary of MassMutual and business conditions in the Leased Premises changed drastically.

30. Simultaneously with the closing of the FMT Sale, MassMutual and FMT entered into that certain First Amendment to Sublease Agreement dated November 30, 2018 (collectively with the Sublease, the "Amended Sublease"). Per the Amended Sublease, the FMT Space was reduced from 33,246 square feet to 27,406 square feet, the rent was reduced to be based on 13,500 rentable square feet, and the term of the Sublease was reduced to terminate on November 30, 2019. A true and correct copy of the Amended Sublease is attached hereto as Exhibit E and

4823-4182-6192
2824397-000006

incorporated herein.

31. FMT is no longer a subsidiary of MassMutual. No MassMutual employees support FMT or occupy the MassMutual Corporate Space. As a result, the MassMutual Corporate Space is currently vacant.

32. The FMT Sale evidences a termination of a business unit. MassMutual's acquisition of FMT represented the first and only acquisition of a company that offered collective investment trusts to small retirement plans. After MassMutual's acquisition of The Hartford's Retirement Plan Group, MassMutual no longer needed FMT in order to expand its business in the small retirement plan market. As a result, MassMutual sold FMT, which sale represents a termination of a business unit of MassMutual.

33. While MassMutual currently maintains two agency leases in Memphis, Tennessee for its local sales firms, those offices are separate and distinct from MassMutual's corporate offices, including the Leased Premises. In particular, the local sales firms do not offer collective investment trusts. The sole reason MassMutual entered into the Lease for this particular corporate office was its acquisition of FMT. Thus, when MassMutual sold FMT, MassMutual no longer had a reason for a corporate office at this particular location. Consequently, the business conditions in this particular office of MassMutual have drastically changed because of the FMT Sale to the extent that MassMutual no longer needs corporate office space in the Memphis, Tennessee area.

### B.   Exercise of Termination Option

34. Pursuant to Section 32 of the Lease, MassMutual may exercise its termination option and terminate the Lease prior to December 31, 2023 upon the following terms:

> **TERMINATION OPTION**: Provided Tenant is not in default at the time of exercise or during the time period from notice to the effective termination date and the Lease is then in full force and effect, Tenant shall have a one time right to terminate the lease subject to the terms and conditions of this Section. Tenant's termination right shall be limited only to the situation in which the business conditions in this particular office of Tenant drastically changes to the extent that Tenant no longer needs to lease office space in the Memphis, Tennessee area. In such an event, then Tenant shall have the right to terminate the Lease effective after the 120th month of rent paying occupancy (the "Termination Date") by giving no less than twelve (12) months' prior written notice and paying the unamortized Tenant Improvement Allowance and brokerage fees plus nine (9) months of the then current monthly Rent at the time of notice. Such costs shall be amortized over the Lease Term with an 8.00% interest rate. This option is not to be construed as a renegotiation of the existing Lease but is limited to the termination of a business unit or units.

(Exhibit A, at § 32.)

35. The Termination Option provides that MassMutual, as the Tenant, shall have a one-time right to terminate the Lease effective after the 120th month of rent paying occupancy. The Termination Option requires MassMutual to provide no less than 12 months' prior written notice and sets forth a formula for arriving at the amount to be paid to the Landlord based on the current monthly Rent at the time of notice, plus costs amortized over the Lease Term with an 8% interest rate.

36. The Termination Option provides MassMutual with a continuing, one-time right to terminate the Lease, effective after the 120th month of rent paying occupancy (i.e., after August 1, 2018). The language in the Termination Option does not require that a notice be exercised on a particular day, but rather after the 120th month of rent paying occupancy. Further, a formula, rather than a specific dollar amount paid on a specific date upon termination of the Lease, is utilized in the Termination Option because the amounts due are dependent upon

business conditions and the date MassMutual exercises its one-time right to terminate the Lease.

37. As a subsidiary of MassMutual, FMT represented a new and distinct business unit of MassMutual. FMT was MassMutual's first and only acquisition of a company that provides collective investment trusts. Given that this was a new and untested business unit for MassMutual, MassMutual was not willing to sign a fifteen (15) year lease unless Landlord gave MassMutual a right to terminate the Lease early in case this particular business unit did not succeed. Such right to terminate early includes a twelve (12) month advance notice period and a significant fee, giving Landlord the time and money needed to find a new tenant.

38. As set forth above and as a result of the FMT Sale, the business conditions in this particular office (i.e., the Leased Premises) of MassMutual have drastically changed to the extent that MassMutual no longer needs corporate office space in the Memphis, Tennessee area. Consistent with the terms of the Lease and after 120 months of rent paying occupancy, MassMutual timely exercised its rights under the Termination Option in Section 32 of the Lease.

39. On January 3, 2019, MassMutual delivered in writing to Landlord an Early Termination Notice and Exercise ("Termination Notice") exercising its right terminate the Lease pursuant to the Termination Option in Section 32 of the Lease effective as of January 15, 2020. In compliance with the Termination Option in Section 32 the Lease, MassMutual enclosed a check in the amount of $1,300,554.00 representing payment in full of the termination fee (the "Termination Fee") due Landlord. A true and correct copy of the Termination Notice is attached hereto as Exhibit F.

40. On January 11, 2019, Landlord responded to the Termination Notice by stating that "the Landlord disagrees with Tenant's assertion that MassMutual has the right to terminate the Lease" and that "Landlord rejects Tenant's purported early termination of the Lease."

Landlord returned the Termination Fee to MassMutual. A true and correct copy of the January 11, 2019 Letter from Landlord to MassMutual is attached hereto as <u>Exhibit G</u>.

41. MassMutual continues to pay monthly rent to Landlord in accordance with the terms of the Lease in compliance with the requirements and terms of the Termination Option. MassMutual has complied with all of the requirements in the advancement of its right to terminate the Lease pursuant to the Termination Option in Section 32 of the Lease. Landlord has rejected and refused to acknowledge MassMutual's right to terminate the Lease despite the fact that MassMutual gave Landlord written notice 12 months in advance and tendered the Termination Fee to Landlord.

42. A justiciable controversy exists as to the interpretation of the Termination Option in the Lease as contemplated under T.C.A. § 29-14-101 *et seq*. A declaratory judgment action is necessary to resolve a dispute, afford relief from uncertainty with respect to rights, status, and legal relations as to MassMutual and Landlord under the Lease as contemplated under applicable law. T.C.A. § 29-14-104 and T.C.A. § 29-14-113.

## COUNT I - DECLARATORY JUDGMENT

43. MassMutual incorporates and reasserts the foregoing paragraphs as if fully set forth herein.

44. Landlord and MassMutual have a fundamentally different interpretation of the Termination Option under Section 32 of the Lease. FMT represented a distinct business unit of MassMutual and the acquisition of FMT was the sole reason MassMutual entered into the Lease. The FMT Sale represents the termination of a business unit and a drastic change in business conditions at the Leased Premises such that MassMutual no longer needs to lease corporate office space in the Memphis, Tennessee area.

4823-4182-6192
2824397-000006

45. MassMutual was not in default of the Lease at the time it exercised its termination option on January 3, 2019, nor has MassMutual been in default at any time thereafter. MassMutual continues to pay monthly rent to Landlord in accordance with the terms of the Lease.

46. MassMutual provided timely notice of termination of the Lease effective January 15, 2020 by sending the Termination Notice on January 3, 2019, no less than twelve (12) months prior written notice, as required under Section 32 of the Lease.

47. Along with the Termination Notice, MassMutual enclosed a check in the amount of $1,300,554.00 representing payment in full of the Termination Fee due Landlord under Section 32 of the Lease.

48. Landlord wrongfully rejected the Termination Fee and refused to acknowledge Tenant's contractual right to terminate the Lease.

49. MassMutual has satisfied all terms and conditions of Section 32 of the Lease and is entitled to terminate the Lease, and has in fact terminated the Lease, effective January 15, 2020. Landlord has wrongfully and unjustly rejected the Termination Notice and returned the Termination Fee contrary to and in defiance of MassMutual's contractual right to exercise the Termination Option under the Lease.

50. As described above, there is an actual and justiciable controversy between MassMutual and Landlord concerning MassMutual's right to exercise the Termination Option under Section 32 of the Lease.

51. MassMutual's contractual right to exercise the Termination Option under the Lease is a real, legally protectable interest.

52. Accordingly, pursuant to Tenn. Code Ann. §§ 29-14-101 *et seq.*, MassMutual is

entitled to a judgment declaring that MassMutual has timely and properly terminated the Lease in accordance with Section 32 of the Lease, and MassMutual has in fact exercised the Termination Option by giving Landlord no less than 12 months' prior written notice evidenced by the Termination Notice and delivering payment of the Termination Fee to Landlord.

WHEREFORE, Plaintiff, Massachusetts Mutual Insurance Company, prays for the following relief:

1. That proper process issue and be served upon each of the Defendants, requiring each of the Defendants to answer this Complaint within the time required by law;

2. Entry of a judgment pursuant to Tenn. Code Ann §§ 29-14-101 *et seq.* declaring that MassMutual is permitted to terminate the Lease pursuant to the Termination Option set forth in Section 32 of the Lease and MassMutual has in fact timely and appropriately exercised such Termination Option by delivering to Landlord the Termination Notice and Termination Fee;

3. Award MassMutual all of its costs against Landlord pursuant to Tenn. Code Ann. § 29-14-111;

4. Leave of Court and entry of an order permitting MassMutual to deposit the disputed Termination Fee into the Court in accordance with Rule 67 of the Federal Rules of Civil Procedure; and

5. For any such other and further relief, both general and specific, to which MassMutual may be entitled.

Date: March 28, 2019.

        Respectfully submitted,

        BAKER, DONELSON, BEARMAN
         CALDWELL & BERKOWITZ, PC


        s/ R. Spencer Clift, III
        R. Spencer Clift, III (TN #20445)
        Zachary A. Kisber (TN #33388)
        165 Madison Avenue, Suite 2000
        Memphis, Tennessee  38103
        Telephone: 901.526.2000
        Fax:  901.577.0744
        sclift@bakedonelson.com
        zkisber@bakerdonelson.com

        *Counsel for Plaintiff - **Massachusetts**
         **Mutual Life Insurance Company***

4823-4182-6192
2824397-000006